SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Theodore Max
    tmax@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Jill M. Pietrini (admitted *pro hac vice*)
    jpietrini@ sheppardmullin.com
Paul Bost (admitted *pro hac vice*)
    pbost@ sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel.: 310-228-3700
Fax: 310-228-3701

*Attorneys for Defendant and Counterclaimant*
SUMMIT ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BATH & BODY WORKS BRAND MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>SUMMIT ENTERTAINMENT, LLC,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 11 Civ. 1594 (GBD)(JLC)<br><br>ECF Case<br><br>**DEFENDANT AND COUNTERCLAIMANT SUMMIT ENTERTAINMENT, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF AND COUNTER-DEFENDANT BATH & BODY WORKS BRAND MANAGEMENT'S ELEVENTH AFFIRMATIVE DEFENSE ALLEGING ADVICE OF COUNSEL**<br><br>**ORAL ARGUMENT REQUESTED** |

I.  **PRELIMINARY STATEMENT**

Defendant and counterclaimant Summit Entertainment, LLC ("Summit") moves the Court for an order striking plaintiff and counter-defendant Bath & Body Works Brand Management, Inc.'s ("BBW") advice of counsel affirmative defense, which was pleaded by BBW for the *first* time as its Eleventh Affirmative Defense in its Answer to Summit's Third Amended Answer and Counterclaims filed on December 17, 2012 – nearly 1½ years after BBW initially filed its Answer to Summit's Counterclaims on July 21, 2011. BBW never filed a motion to amend its Answer to Summit's Counterclaims to add this affirmative defense to Summit's infringement, false designation of origin, dilution, and unfair competition counterclaims. Instead, BBW has tried to sneak in this affirmative defense in response to certain amendments made by Summit to its counterclaims directed to the cancellation of two registrations of TWILIGHT (the "TWILIGHT Registrations") that BBW obtained on August 31, 2012 from Coty Germany GmbH ("Coty"). Consequently, the defense is either untimely and prejudicial to Summit or insufficient on its face.

BBW's advice of counsel defense is an insufficient defense to any allegations or claims that are original to Summit's Third Amended Answer and Counterclaims filed on November 28, 2012, i.e., Summit's claims to cancel the TWILIGHT Registrations. An advice of counsel defense defends against an allegation that a party acted with a certain state of mind as to infringement, false designation of origin, dilution, and unfair competition claims, and there are no such allegations, claims, or prayers for relief original to Summit's Third Answer and Counterclaims hinging upon BBW's state of mind or scienter. The counterclaims added in Summit's Third Answer and Counterclaims are directed, *inter alia*, to the fraud committed <u>by Coty and its predecessors</u>, not BBW, in obtaining the TWILIGHT Registrations. Consequently, BBW's purported reliance on advice of counsel in proceeding with the use and attempted registration of TWILIGHT WOODS and TWILIGHT CRUSH is completely independent of Coty's actions and that of its predecessors in obtaining the TWILIGHT Registrations that are at issue in Summit's Third Amended Answer and Counterclaims. Thus, BBW's attempt to add an

advice of counsel defense in response to Summit's Third Amended Answer and Counterclaims is improper on its face.

To the extent BBW's advice of counsel defense purports to defend against allegations, claims, or prayers for relief raised by Summit well prior to its Third Amended Answer and Counterclaims (i.e., Summit's claims for infringement, dilution, and unfair competition), the Court should still strike the defense as an improper and prejudicial amendment of BBW's pleadings. If the Court does not strike BBW's advice of counsel defense, BBW will effectively be granted leave to plead a new defense to Summit's longstanding infringement, false designation of origin, dilution, and unfair competition counterclaims well after the Court-ordered deadlines to amend pleadings (November 3, 2011) and to complete fact discovery (May 15, 2012, and, for depositions, June 1, 2012) have passed. Pursuant to FRCP 15(a)(2), BBW had to seek leave from the Court to add this new defense to attempt to negate willfulness for Summit's infringement, false designation of origin, dilution and unfair competition claims. BBW chose not to, and it cannot now try to bring in such a substantive amendment to its pleadings now. Notably, BBW seeks to add this affirmative defense shortly before the deadline to file motions for summary judgment. Summit suspects that BBW will attempt to use its "newly added" advice of counsel defense to allege that it did not intent to trade on Summit's well-established and famous rights associated with its *Twilight* motion pictures. BBW should not be able to now add a substantive defense directed to one of the *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) likelihood of confusion factors.[1]

---

[1] To the extent that BBW argues that Summit took discovery on this issue, BBW overstates the issue. BBW chose to waive its attorney-client privilege as to the advice of counsel it received as to the use and registration of TWILIGHT WOODS during the deposition of its president of brand development, Camille McDonald, taken one day before the close of fact discovery on May 15, 2012 (this deadline was ultimately extended to June 1, 2012 for the parties to take certain depositions). (Bost Decl. ¶ 2.) BBW then put up its outside trademark counsel to testify as to certain categories of Summit's FRCP 30(b)(6) deposition notice (knowledge of Summit's TWILIGHT marks (#5); trademark search reports for TWILIGHT WOODS and TWILIGHT CRUSH (#9); and registrations and applications to register TWILIGHT CRUSH and TWILIGHT WOODS (#13). (Bost Decl. ¶¶ 3, 5, Exs. B, D.) The problem with this scenario is that BBW never alleged an advice of counsel defense before either such deposition, and never produced the person at BBW who actually received the advice of counsel.

## II. STATEMENT OF RELEVANT FACTS

This lawsuit revolves around Summit's claims that BBW's use and registration of the trademarks TWILIGHT WOODS and TWILIGHT CRUSH on personal care products infringes and dilutes Summit's rights in the TWILIGHT mark, infringes Summit's trade dress on certain of its licensed cosmetic products, and constitutes unfair competition and false designation of origin. BBW instituted this litigation on March, 8 2011 when it filed its complaint against Summit for declaratory relief. [Docket No. 1.] On June 28, 2011, Summit filed its Answer and Counterclaims setting forth the above allegations, the substance of which, apart from the amendments set forth below and a correction from California state law to New York state law on the pendant claims, remains Summit's operative pleading in this dispute. [Docket No. 24.] On July 21, 2011, BBW filed its Answer to Summit's Counterclaims. [Docket No. 30.]

Since then, Summit has amended its counterclaims on three occasions. First, on October 11, 2011, Summit filed its First Amended Answer and Counterclaims in order to clarify its claim of trade dress infringement as a result of BBW's motion to dismiss the same. [Docket No. 40.] After the conclusion of discovery (May 15, 2012), Summit filed its Second Amended Answer and Counterclaims to allege new grounds for cancellation of BBW's TWILIGHT CRUSH registration based on information obtained from BBW during discovery. [Docket No. 77.] Summit's most recent amendment to its Counterclaims was precipitated by third party Coty's assignment of its purported rights in the TWILIGHT Registrations to BBW on August 31, 2012, and BBW's assertion of an affirmative defense of priority based thereon.[2] [Docket No. 80.] Summit was granted leave to file its Third Amended Answer and Counterclaims to seek cancellation of the TWILIGHT Registrations on a variety of grounds, including, for purposes of

---

[2] BBW likewise did not seek leave to amend their Answer to Summit's Second Counterclaim to add a priority defense. The Court could therefore strike, *sua sponte*, BBW's priority defense designated as its Tenth Affirmative Defense. The priority defense is irrelevant to Summit's Second Amended Counterclaims directed to the cancellation of the TWILIGHT CRUSH registration based on abandonment. Summit did not seek to strike the priority affirmative defense at the time because BBW only recently acquired the TWILIGHT Registrations on August 31, 2012. In contrast, BBW has known about its purported reliance on advice of counsel since its first adoption of TWILIGHT WOODS in 2009.

this motion, BBW's naked licensing and, thus, abandonment of the TWILIGHT mark, BBW's and Coty's invalid assignment in gross of the TWILIGHT Registrations, and Coty's and its predecessors in interest's fraud on the United States Patent & Trademark Office in procuring the TWILIGHT Registrations. [Docket No. 87.]

On December 17, 2012, BBW filed its Answer to Summit's Third Amended Counterclaims. [Docket No. 89.] In this most recent Answer, BBW asserted as its Eleventh Affirmative Defense that Summit's Counterclaims are "barred in whole or in part by the doctrine of advice of counsel." Although this was the <u>fourth</u> Answer BBW has filed to Summit's Counterclaims, this was the <u>first time</u> that BBW raised an advice of counsel affirmative defense in its pleadings. To the extent this defense was pleaded with respect to Summit's infringement, dilution, and unfair competition claims, BBW was aware of it years before December 17, 2012. Either BBW adopted the TWILIGHT WOODS and TWILIGHT CRUSH marks in 2009 in good faith reliance on advice of its counsel, or it did not. It did not take Summit to amend its Counterclaims to add cancellation claims directed to the TWILIGHT Registrations sold by Coty to BBW for BBW to learn for the first time that it had purported good faith based on its advice of counsel. Indeed, on May 16, 2012, two days after BBW waived the attorney-client privilege and upon being informed that BBW was making its outside trademark counsel, Gregory Colucci, available for deposition, Summit warned BBW that it would take Mr. Colucci's deposition without waiving its objections to BBW attempting to assert an advice of counsel defense. (Bost Decl. ¶ 4, Ex. C.) BBW did not seek leave from the Court at that time or at any other time. Rather, BBW waited another <u>seven</u> months to plead an advice of counsel defense to Summit's infringement, false designation of origin, dilution, trade dress, and unfair competition claims.

### III. THE COURT SHOULD STRIKE BBW'S ADVICE OF COUNSEL AFFIRMATIVE DEFENSE

#### A. The Standard for Granting a Motion to Strike

FRCP 12(f)(2) authorizes a party to move the Court to strike from a pleading an insufficient defense within 21 days after being served with the pleading. The Court may also strike any matter from a pleading on its own. FRCP 12(f)(1). *See In re NASDAQ Market-*

*Makers Antitrust Litig.*, 164 F.R.D. 346, 349 (S.D.N.Y. 1996) (a court has inherent authority to strike any material from a pleading that it determines to be improper.) A defense should be stricken when it is insufficient on the face of the pleadings. *See Oliner v. McBride's Indus.*, 106 F.R.D. 14, 17 (S.D.N.Y. 1985). A defense that is not a valid defense to the action can and should be stricken. *MTA Metro-North R.R. v. Buchanan Marine, L.P.*, 2006 WL 3544936, *3 (D.C. Conn. 2006). Also, a motion to strike will be granted "if there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the defense to stand would prejudice the plaintiff." *Id.*, citing *F.R.A. S.p.A. v. Surg-O-Flex*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976). Finally, it is self-evident that an affirmative defense or other pleading should be stricken when the party alleging it did not seek leave from the Court to file it. *See* FRCP 15(a)(2).

> **B. Advice of Counsel is Not an Affirmative Defense to Any of the Allegations or Claims Original to Summit's Third Amended Answer and Counterclaims**

The advice of counsel affirmative defense, in the context of trademark litigation as well as civil and criminal law generally, operates to defend against any allegation that a party committed an act with a specific state of mind, e.g., willfully or in bad faith. *See In re Seagate Technology, LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007) ("Under [an advice of counsel defense], an accused willful infringer aims to establish that due to reasonable reliance on advice from counsel, its continued accused activities were done in good faith"); *Adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp.2d 1029, 1047 (D. Or. 2008), *citing Columbia Picture Television, Inc. v. Krypton Broad. of Birmingham*, 259 F.3d 1186, 1196 (9th Cir. 2001) ("A defendant's reliance on the advice of counsel is relevant to the question of willfulness"); *Cuisinarts, Inc., v. Robot–Coupe International Corporation*, 580 F. Supp. 634, 638 (S.D.N.Y. 1984) ("But if a client seeks qualified counsel's advice in a timely manner, makes adequate disclosure to counsel, receives counsel's opinion and then acts upon it, surely the Chancellor must pause before branding the client as a willful, deliberate, fraudulent commercial thief"); *Sands, Taylor & Wood v. Quaker Oats*, 978 F.2d 947, 962 (7th Cir. 1992) ("A party who acts in reasonable reliance on the advice of counsel regarding a close question of trademark law

generally does not act in bad faith"); *Thomas Nelson Inc. v. Cherish Books Ltd.*, 595 F. Supp. 989, 992 (S.D.N.Y. 1984) (court ruled that the case was not an exceptional one warranting attorney's fees because plaintiff demonstrated that it was acting on advice of counsel) Accordingly, the advice of counsel defense is <u>only relevant</u> to claims or allegations that have an element of scienter or mens rea. It is for this reason that good faith reliance on advice of counsel is not a defense to trademark infringement or any other strict liability tort, but may be a defense to a claim or allegation with an element of willfulness or bad faith. *See Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004) (a wrongful intent is not a prerequisite in a Lanham Act case for trademark infringement under § 32 or under § 43(a).) BBW seeks to add the affirmative defense of reliance on advice of counsel to negate the strong evidence of intent in this case and to diminish the amount of monetary recovery to Summit.

Summit's Third Amended Answer and Counterclaims do not include any heretofore unpleaded allegations, claims, or prayers for relief regarding, implicating, or addressing the state of mind of BBW. The vast majority of Summit's new allegations supporting its cancellation counterclaims relate to the acts of BBW's predecessors in interest to the TWILIGHT Registrations, i.e., that of Coty, Tenpenny Group, Inc. ("Tenpenny"), and Moshe, Inc. ("Moshe").[3] Summit raised only two new allegations supporting cancellation of the TWILIGHT Registrations <u>implicating BBW</u>, specifically: (1) that Coty's assignment of the TWILIGHT Registrations to BBW on August 31, 2012 was done without an assignment of the underlying goodwill associated with the TWILIGHT mark and, thus, is an invalid assignment in gross; and (2) the license between BBW and Very Fetching Company is a naked license and, therefore, an abandonment of the TWILIGHT mark. Neither of these claims requires specific intent; they do not depend in any manner on BBW's state of mind and BBW cannot defend against them by any showing that it lacked bad faith, willfulness, or any other relevant scienter. In terms of

---

[3] Although certain of Summit's new allegations relate to the state of mind of Moshe, Tenpenny, and Coty (e.g., Summit's claims relating to fraud on the U.S. Patent & Trademark Office by Moshe, Tenpenny, and Coty), BBW, of course, did not and cannot rely on any advice of counsel received by Moshe, Tenpenny, or Coty (if such advice of counsel even exists).

defending against these counterclaims, it is irrelevant whether BBW relied on advice from counsel (if it did at all) that its assignment agreement with Coty included all purported goodwill in the TWILIGHT mark or relied on advice from counsel as relates to its licensing of the TWILIGHT mark. Like trademark infringement, these are no-fault claims. BBW cannot defend either of these allegations based on any alleged advice of counsel it received as there is no relevant scienter for the advice of counsel to immunize. Put another way, BBW's purported advice of counsel is only relevant, as pertains to Summit's allegations, to negate a finding of willful infringement, dilution, false designation of origin, and unfair competition and therefore should have been alleged in BBW's Answer to Summit's Counterclaims filed on July 21, 2011. [Docket No. 30.] Consequently, the Court should strike BBW's advice of counsel defense because it is an insufficient defense to any allegations original to Summit's Third Amended Answer and Counterclaims, and was filed without leave to amend from the Court.

    **C.    To the Extent BBW Pleads Advice of Counsel as an Affirmative Defense to Any of Summit's Other Claims, it is an Improper and Prejudicial Amendment of its Pleading**

Summit's Third Amended Counterclaims is the fourth iteration of Summit's Counterclaims against BBW. Summit initially filed its Counterclaims more than 18 months ago on June 28, 2011. [Docket No. 24.] Since then, Summit has amended its Counterclaims on three occasions *by leave of Court and/or with the consent of BBW*: (1) to clarify its claim of trade dress infringement in response to BBW's motion to dismiss the same [Docket No. 40; October 11, 2012]; (2) to allege new grounds for cancellation of BBW's TWILIGHT CRUSH mark based on information obtained during discovery [Docket No. 77; August 6, 2012]; and (3) to add cancellation of the TWILIGHT Registrations in response to BBW's purchase of the TWILIGHT Registrations on August 31, 2012 and assertion (without leave of court) of an affirmative defense of priority. [Docket No. 87; November 28, 2012]. As demonstrated above, advice of counsel is an insufficient defense to any of the allegations raised against BBW in the most recent iteration of the Summit's Counterclaims. It is clear that BBW is attempting to insert an advice of counsel defense against Summit's infringement, dilution, false designation of origin, and unfair competition claims raised in Summit's prior pleadings. However, to add that defense now is

tantamount to an unauthorized amendment of BBW's Answer.  FRCP 15(a)(2) holds that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  There is no question that BBW has secured neither; accordingly, the Court should strike BBW's advice of counsel affirmative defense.

Furthermore, to the extent the Court even considers BBW's advice of counsel defense as an amendment of BBW's Answer (it should not), BBW has unjustifiably delayed this amendment to the great prejudice of Summit.  It is well established that amendments of pleadings should be sought promptly in order to avoid any prejudice to the other party.  *See Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998), *citing Barrows v. Forest Labs.*, 742 F.2d 54, 58 (2d Cir. 1984) ("considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend"); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.")  Affirmative defenses are to be pleaded promptly to avoid prejudice to other parties. *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 161-62 (S.D.N.Y. 2005), *citing Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) ("Failure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms"); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) ("As a practical matter, however, any delay in asserting an affirmative defense for a significant period of time will almost invariably result in some 'prejudice' to the nonmoving party.... [T]he proper standard is one that balances the length of the delay against the resulting prejudice.... [T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.")

BBW has substantially and unjustifiably delayed a year and a half in alleging its purported advice of counsel affirmative defense.  The parties' deadline to amend their pleadings expired more than a year ago on November 3, 2011.  [Docket No. 30.]  BBW's amendment comes well after the close of fact discovery on May 15, 2012 (Docket No. 48), and extended to

June 1, 2012 to take certain depositions (Docket No. 60). Further, Summit warned BBW on May 16, 2012 that it would challenge any attempt to assert an advice of counsel defense. (Bost Decl. ¶ 4, Ex. C.) By the very nature of the defense, BBW alone is in possession of the information on which it is based (as opposed to information uncovered during the course of discovery). In other words, BBW could and should have alleged this defense at the outset of this case or, at the very least, sought leave to amend to include this defense prior to the close of discovery.

BBW knows whether it had good faith in adopting and seeking registration of TWILIGHT WOODS and TWILIGHT CRUSH – it did not need to wait until almost 2 years after *it* filed this case to assert an advice of counsel defense. BBW delayed asserting this defense, surreptitiously sneaking it into its most recent Answer filed in late December 2012. Clearly, Summit is greatly prejudiced by BBW's delayed assertion of the advice of counsel defense because it is precluded from taking full discovery relevant to BBW's alleged advice of counsel affirmative defense. As noted, BBW first waived the attorney client privilege as it relates to the use and registration of TWILIGHT WOODS during the deposition of its president of brand development Camille McDonald, one day before the close of fact discovery. BBW then produced its outside trademark counsel in response to three categories identified in Summit's FRCP 30(b)(6) notice. At no time did BBW ever produce the person at BBW who actually received the advice of counsel alluded to in its correspondence between BBW and its outside counsel regarding TWILIGHT WOODS and TWILIGHT CRUSH. *See In re Echo Star Communications Corp.*, 448 F.3d, 1294, 1305 (Fed. Cir. 2006) ("In sum, the advice-of-counsel defense to willfulness requires the court to decide *inter alia* whether counsel's opinion was thorough enough to 'instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.'") Indeed, by the time that BBW apparently waived its attorney-client privilege during the deposition of Camille McDonald, it was too late for Summit to conduct any written discovery on BBW directed to this waiver. Ms. McDonald's deposition was taken on May 14, 2012, and fact discovery closed on May 15, 2012, with the exception of certain depositions to be taken by June 1, 2012.

In short, BBW cannot state with a straight face that Summit has already obtained discovery on its just now added "advice of counsel defense" that was snuck into BBW's pleadings seven months after BBW purported to first waive its attorney-client privilege as to the use and registration of TWILIGHT WOODS.

Consequently, the Court must strike BBW's advice of counsel affirmative defense lest it effectively grant BBW leave to amend its pleading despite lacking any justification for its delay, all to Summit's great prejudice. If the Court allows this belated amendment adding a new affirmative defense at this late date (without BBW ever having to file a motion for leave to amend its Answer to Summit's Counterclaims to add this defense), then the Court must reopen discovery and allow Summit full discovery on this defense, which will further delay the resolution of this case. However, Summit wants this case to proceed to trial and it should not have to back track in discovery when BBW very well could have alleged its "advice of counsel" defense in July 2011, but strategically waited a year and half before raising it in any of its pleadings.

## IV. CONCLUSION

Based on the foregoing, Summit respectfully requests that the Court strike BBW's Eleventh Affirmative Defense that Summit's "counterclaims are barred in whole or in part by the doctrine of advice of counsel." Summit requests oral argument on this motion.

Respectfully submitted,
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: January 7, 2013

/s/Jill M. Pietrini
Jill M. Pietrini (admitted *pro hac vice*)
Paul Bost (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel.: (310) 228-3700
Fax: (310) 228-3701

*Attorneys for Defendant and Counterclaimant*
SUMMIT ENTERTAINMENT, LLC

SMRH:407754478.1