SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Theodore Max
    tmax@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Jill M. Pietrini (admitted *pro hac vice*)
    jpietrini@ sheppardmullin.com
Paul Bost (admitted *pro hac vice*)
    pbost@ sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel.: 310-228-3700
Fax: 310-228-3701

*Attorneys for Defendant and Counterclaimant*
SUMMIT ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BATH & BODY WORKS BRAND MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>SUMMIT ENTERTAINMENT, LLC,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 11 Civ. 1594 (GBD)(JLC)<br><br>ECF Case<br><br>**DEFENDANT AND COUNTERCLAIMANT SUMMIT ENTERTAINMENT, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF AND COUNTER-DEFENDANT BATH & BODY WORKS BRAND MANAGEMENT'S ELEVENTH AFFIRMATIVE DEFENSE ALLEGING ADVICE OF COUNSEL**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

The crux of plaintiff and counter-defendant Bath & Body Words Brand Management, Inc.'s ("BBW") opposition to defendant and counterclaimant Summit Entertainment, LLC's ("Summit") motion to strike is that Summit should have filed a motion to strike BBW's advice of counsel defense in May 2012 – even though BBW did not plead that defense until December 2012. Summit knew that BBW *might* attempt to bring an advice of counsel defense and warned BBW that it would object to it. Summit learned that BBW was waiving the privilege as to certain advice when it served its Amended Initial Disclosures on the day before the close of discovery and when BBW's President of Brand Management, Camille McDonald, testified. BBW then sat on its hands for seven months and alleged the advice of counsel defense in response to Summit's Third Amended Counterclaim, which was precipitated by BBW's acquisition of two registrations of TWILIGHT obtained by Coty GmbH ("Coty"). BBW admits that its Eleventh Affirmative Defense of advice of counsel – which it asserted for the first time on December 17, 2012 in response to Summit's Third Amended Answer and Counterclaims – does not pertain to any allegations unique to Summit's Third Amended Counterclaims, but, instead, claims made by Summit in its initial Counterclaims. BBW cannot show diligence in pursuing its affirmative defense and, in fact, has not expressed *any* explanation for its delay.

BBW claims that its actions are justified because, as a matter of law, it was entitled to raise any defense to Summit's Third Amended Counterclaims as long as it was remotely legally and factually cognizable. On its face, this position smacks of injustice and promotes gamesmanship; unsurprisingly, it finds only minimal support in relevant, precedential case law (whose facts are entirely distinguishable to this case). On the contrary, the Southern District of New York has *repeatedly* determined that an answer to an amended complaint must be narrowly confined or proportional to any allegations original to the amended complaint, and that defenses or counterclaims in an answer that go above and beyond responding to the amended complaint should be stricken. If the Court were to follow BBW's logic, it could amend its answer at any time to bring in entirely new defenses – even well after the close of discovery as in this case.

That is not the law on amending pleadings. If it were, it would allow for sandbagging at trial with new affirmative defenses.

Additionally, Summit will be greatly prejudiced if the Court does not strike BBW's affirmative defense or grants BBW leave to amend its Answer to assert this defense. Summit did not have an opportunity to take full discovery as to BBW's advice of counsel defense because BBW intentionally delayed waiving the attorney-client privilege with respect to any relevant advice of counsel until <u>the day before discovery closed</u>. Concurrent with BBW's waiver of the privilege, Summit expressly reserved its right to object to BBW's assertion of an advice of counsel defense should BBW actually assert it; nevertheless, BBW refused to expressly state that it was relying on its advice of counsel to defend against Summit's claims of willfulness, instead waiting until December 17, 2012 to do so. As noted above, BBW contends that Summit has waived any objection to BBW's assertion of this defense by failing to move the Court for further discovery relevant to BBW's advice of counsel defense. This position is, to be frank, absurd. Until December 17, 2012 and BBW's pleading of its advice of counsel defense, there was no defense upon which to file a motion. More importantly, BBW misunderstands that the burden is on it, not Summit, to plead BBW's affirmative defense.[1]

## II. BBW'S DEFENSE SHOULD BE STRICKEN BECAUSE IT IS NEITHER NARROWLY CONFINED NOR PROPORTIONAL TO FACTS AND CLAIMS ORIGINAL TO SUMMIT'S THIRD AMENDED COUNTERCLAIMS

In this District, it is well established that a defense pleaded for the first time in response to an amended complaint may be stricken as an improperly amended answer if it does not narrowly or proportionally respond to the material original to the amended complaint but, instead, goes "above and beyond" responding to the amended complaint. *See Wechsler v. Hunt Health Sys. Ltd.*, 186 F. Supp.2d 402, 416. (S.D.N.Y. 2002). Contrary to BBW's position otherwise, the filing of an amended complaint does not grant the responding party an opportunity to plead any defenses or counterclaims as of right; instead, the responsive pleading must, at the

---

[1] In contrast to BBW, Summit has sought leave of the Court to amend its Counterclaims on two occasions promptly upon learning the facts grounding its allegations.

very least, bear some relation to the amended complaint. BBW's late pleading of the advice of counsel affirmative defense clearly contradicts this principal and any such opportunistically pleaded defenses should be stricken regardless of their factual or legal sufficiency or relevancy; otherwise, a defendant, such as BBW, could expand the scope of its defenses or counterclaims whenever a plaintiff amended its complaint and without consideration of the reasons for the amendment. In *Wechsler*, plaintiff was granted leave to amend its complaint to add claims against defendants for failure to pay liquidated damages and fraudulent conveyance. *Id*. at 415. Defendants were, of course, entitled to file an "answer in response to the plaintiff's amended complaint," but overstepped this right by "assert[ing] new claims, defenses and allegations that the Court finds are not in response to the Amended Complaint" and, effectively, amending their answer as a matter of right. *Id*. Because "the new portions in defendants' Amended Answer go above and beyond responding to" any facts or claims original to plaintiff's amended complaint, the Court struck said portions of defendants' amended answer and, further, denied defendants' motion for leave to amend their answer *nunc pro tunc*. *Id*. at 416, 419.

In *Equal Employment Opportunity Commission v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 226 (S.D.N.Y. 2002), the court granted plaintiff leave to amend its complaint in order to correct terms used in its complaint to identify groups of claimants. However, in its answer to this amended complaint, defendant added three new affirmative defenses "all of which are unrelated to [plaintiff's] amendments." *Id*. at 226-27. After reviewing the "divergent case law" as to whether defendant was entitled to add defenses that are unresponsive to the amended complaint with leave of court, the court – agreeing with *Wechsler* – granted plaintiff's motion to strike, holding that defendant "should have sought leave of the Court in order to assert defenses unrelated to [plaintiffs'] amended complaint." *Id*. at 227. The court reasoned that "**[i]f every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause**." *Id*. (emphasis added.) The court denied defendant's motion that it be granted leave to amend *nunc pro tunc* despite the fact that discovery had not yet closed, in part because of defendant's failure to "adequately explain[] why it waited until now" to amend

its answer. *Id*. at 227. In such circumstances, "[t]he Court can only assume that [defendant] has delayed in asserting these defenses for the purpose of vexation. *Id*. at 227-28.

Also, in *The Southern New England Telephone Company v. Global Naps, Inc.*, 2007 WL 521162, *5 (D. Conn. 2007) ("*SNEC*"), the court granted plaintiff's motion to strike counterclaims raised by the defendant in response to the plaintiff's amended complaint which simply added defendants that were alter egos of the existing defendant. The court held that "the filing of an amended complaint cannot amount to a blank slate for the opposing party . . . [defendant] was required to seek leave of this court to file it counterclaims." *Id.* at *3. Furthermore, the court did not grant the defendant leave to amend its answer; the basis for its counterclaims arose nearly four months before the plaintiff filed its complaint, and the defendant's proffered excuse for its delay "does not clarify why it neglected to moving to add the omitted counterclaims . . . when it first learned of the oversight, rather than laying in wait until [plaintiff] was grated leave to amend." *Id*. at *4.[2]

The above cases are indicative of the so-called "narrow" view of when a responding party, such as BBW, must seek leave of the Court to assert a new defense or counterclaim in response to an amended complaint, i.e., it must seek leave except when the new defense or counterclaim is narrowly confined to any allegations or claims unique to the amended complaint. According to this approach, which Summit contends is the appropriate one, BBW's assertion of its advice of counsel defense clearly constituted an impermissible amendment of its Answer without leave of Court. By its own admission, BBW's advice of counsel defense relates to allegations of willfulness raised by Summit in its initial Answer and Counterclaims of June 28, 2011,[3] not any allegations unique to Summit's Third Amended Answer and Counterclaims (or,

---

[2] *See also Nolan v. City of Yonkers*, 1996 WL 120685, *4 (S.D.N.Y. 1996) ("defendants did not have a right to assert new counterclaims in their answers to the [amended complaint] in the same way that they had a right to assert counterclaims in their original answer.")

[3] Contrary to BBW's misrepresentation otherwise, Summit does not contend that its initial Answer and Counterclaims is its operative pleading in this matter. Instead, Summit's point is that the facts alleged by Summit in its initial pleading remain the operative facts upon which this matter, and BBW's advice of counsel defense, is based. BBW admits as much by agreeing that it was on notice as of June 28, 2011 – the date Summit filed its Counterclaims – of Summit's claims that BBW acted willfully.

for that matter, allegations unique to Summit's First or Second Amended Answer and Counterclaims). In fact, BBW further admits that *Summit* was aware that BBW disputed Summit's allegations of willfulness since, at least, July 21, 2011, when BBW filed its Answer to Summit's Counterclaims; by the same token, BBW must have known by the date, if not well earlier, how it intended to defend against such allegations. Nevertheless, BBW has laid in wait until recently to plead this affirmative defense, the only explanation for which (in light of BBW's failure to provide any explanation otherwise[4]) is to prejudice and vex Summit. When, as in this case, the affirmative defense has been known to the defendant well prior to its late assertion, courts are reticent to validate this gamesmanship by granting the defendant leave to amend its pleading. Accordingly, if BBW intended to assert an advice of counsel affirmative defense, it should have timely pleaded it or sought leave to amend to plead that defense. Certainly, BBW knew whether it relied upon advice of counsel when it selected its trademarks in 2009.

Although the Court should apply the "narrow" approach reflected in the above decisions, even if it applies the so-called "moderate" approach, BBW's advice of counsel defense still constitutes an impermissible amendment of the pleadings. According to the "moderate" approach, if a plaintiff's amended complaint "changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the [p]laintiff." *Pereira v. Cogan*, 2002 WL 1822928, *3 (S.D.N.Y. 2002), *citing Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 832 (N.D. Iowa 1997). That said, a "defendant who is responding to an amended complaint cannot amend his answer as of right without any regard to the amendments taken by his adversary." *Pereira* at *4. The "moderate" approach is inferior to the "narrow" approach: "no court has provided satisfactory guidance for how a court or the litigants before it are to determine if the breadth of the changes set forth in an answer are comparable to those set forth in the amended complaint . . .[the moderate approach] does not appear to lend itself to consistent application." *SNEC* at *3.

---

[4] Likewise, BBW does not explain why it did not raise the advice of counsel affirmative defense in its Answers to Summit's First or Second Amended Counterclaims.

In *Pereira*, the court, applying the so-called "moderate" approach, granted the plaintiff's motion to strike the defendant's affirmative defense claiming an offset of plaintiff's claimed damages, which was pleaded in response to the plaintiff's amended complaint adding an alternative theory concerning an already pleaded corporate governance issued. *Pereira* at *4. Even though the plaintiff "arguably expanded the scope of his claims by adding an alternative theory for relief," the defendant's added affirmative defense – which did not respond to plaintiff's amended claims – was not proportional to the plaintiff's change. The *Pereira* defendant asserted "an affirmative defense about which [defendant] had knowledge for a long period of time . . . and parties are required to act promptly to assert affirmative defense rather than 'lie behind a log' [citation omitted] and ambush a plaintiff." *Id*. The court found as much despite acknowledging that the defendant had disclosed documents relevant to the defense to plaintiff and examined plaintiff's witnesses about them in discovery prior to pleading the affirmative defense at issue. *Id*. at *2.[5]

Accordingly, even under the "moderate" approach, BBW effectively and impermissibly amended its answer without leave of Court by pleading the advice of counsel defense in response to Summit's Third Amended Counterclaims. Summit did not expand the scope of its claims by filing its Third Amended Counterclaims. Instead, it was *BBW* who expanded the scope of the matter by purchasing Coty's purported rights in the TWILIGHT mark and, on that basis, asserting an affirmative defense of priority; Summit's Third Amended Counterclaims were specifically pleaded in response to BBW's priority affirmative defense. Consequently, BBW cannot claim that its recent pleading of the advice of counsel defense is a permissible tit-for-tat. Also, as established above, BBW cannot demonstrate that the advice of counsel defense is remotely responsive to Summit's Third Amended Counterclaims; in fact, BBW has admitted that is not. *Pereira* and *Unigene* are particularly instructive with respect to the instant matter because

---

[5] *See also Unigene Laboratories, Inc. v. Apotex, Inc.*, 2010 WL 2730471, *5 (S.D.N.Y. 2010) (court refused to consider the defendant's claim/defense of inequitable conduct raised for the first time in response to the plaintiff's unrelated amended complaint; although the defendant had given "some notice" to the plaintiff of this claim, its subsequently filed answer did not allege it.)

in both cases, defendants made plaintiffs aware of facts they believed were potentially supportive of a claim or defense but, nevertheless, failed to seek leave from the court to plead it. Similarly, BBW cannot mitigate its failure to timely seek leave from the court to plead its affirmative defense by pointing to documents and witnesses it made available to Summit *seven* months prior to asserting the defense (and, as set forth below, BBW's disclosures were inadequate and did not provide Summit full discovery on the defense). Moreover, BBW has not provided any authority for its position that it is Summit's duty to seek leave from the Court to conduct further discovery into BBW's then-unasserted advice of counsel affirmative defense instead of BBW's duty to affirmatively seek leave to amend its Answer on a timely basis.

Finally, BBW's argument that Summit's filing of its Third Amended Answer and Counterclaims granted it free reign to raise any affirmative defenses it wished regardless of the scope of Summit's amendments is specious. The above cases confirm that BBW's position is without basis. The cases[6] cited by BBW in support of its position are unavailing and inapplicable as follows. In *Plon Realty Corp v. Travelers Ins. Co.*, 533 F. Supp.2d 391, 392 (S.D.N.Y. 2008), plaintiff argued that defendant waived its statute of limitations defense because it failed to assert the defense in response to plaintiff's initial complaint, but the court rejected this argument as defendant promptly pleaded the defense in response to plaintiff's amended complaint which was amended specifically for the purpose of backdating the incident triggering the statute of limitations. *Id*. at 394. In the instant matter, BBW's advice of counsel defense is decidedly not germane to allegations new to Summit's Third Counterclaims.

---

[6] In support of its position, BBW cites to two District of Delaware decisions, i.e., *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D. Del. 1970) and *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 1995 WL 562285, *2 (D. Del. 1995). This Court is not bound by these cases or Third Circuit jurisprudence. Furthermore, both of these cases are entirely distinguishable from this case on their facts. Notably, Summit did not amend its pleading at its own peril but, instead, did so specifically and only in response to BBW's newly asserted priority defense raised 3½ months after the close of discovery. BBW also cites to the *unpublished* decision *Bey v. City of New York*, 454 F. Appx. 1, 3-4 (2d Cir. 2011), in which the court held that defendant's res judicata defense – which it raised in response to plaintiff's amended complaint – was valid, in part based on the court's power to raise and consider any such defense *sua sponte* and plaintiff's "full opportunity to oppose [the defense] on its merits."

In *Rosenberg v. City of New York*, 2011 WL 4592803, *15 (E.D.N.Y. 2011), *Vincent v. Money Store*, 2011 WL 4501325, *5 (S.D.N.Y. 2011), and *The Legal Aid Soc'y v. City of New York*, 114 F. Supp.2d 204, 222 (S.D.N.Y. 2000), the defendants were allowed to assert affirmative defenses they raised in response to amended, not initial, complaints. None of these opinions hold that a defendant, as a matter of right, can assert *any defense* in response to an amended complaint, but rather that, under each case's circumstances, the defendant's assertion of its defense was "timely" and without prejudice to the plaintiff. This is not the case here; BBW's pleading is untimely and poses great prejudice to Summit. Also, in *Sidari v. Orleans County*, 174 F.R.D. 275 (W.D.N.Y. 1996), the court held that a party's right to file a motion to strike is rejuvenated with each amendment of the pleadings; the language relied on by BBW was dicta.

*Diesel Props S.R.L. v. Greystone Business Credit II LLC*, 2008 WL 4833001 (S.D.N.Y. 2000) is also unavailing. *Diesel* does not stand for the proposition that a defendant has the right to assert new defenses without regard to the scope of the amended complaint to which it is responding. Instead, the *Diesel* court – applying the "moderate" approach addressed above – deemed the defendant's newly asserted allegations a proportional and appropriate response to the significant amendments included in the plaintiff's amended complaint. *Id*. at *3-5. This is different than this case, where Summit's allegations new to the Third Amended Complaint do not require an amended response from BBW but, in fact, were alleged *in response* to BBW's amended answer asserting a belated priority defense.

### III. SUMMIT WILL BE GREATLY PREJUDICED IF THE COURT DENIES ITS MOTION TO STRIKE OR GRANTS BBW LEAVE TO ASSERT THE ADVICE OF COUNSEL AFFIRMATIVE DEFENSE

For all of the dates included in BBW's opposition brief, one is conspicuously absent: **May 15, 2012**, the parties' deadline to conduct fact discovery. Specifically, each of BBW's discovery disclosures related to its advice of counsel defense literally occurred on May 14, 2012, the eve of the close of discovery. Below is a rundown of what BBW disclosed on that date:

- On May 14, 2012 at 9:51 a.m., Summit began the deposition of BBW's President of Brand Development, Camille McDonald. It concluded at 5:13 p.m.

- At 1:50 p.m., BBW first produced correspondence between it and its trademark attorney, Greg Colucci.

- In the middle of Ms. McDonald's deposition, BBW instructed her to answer questions related to what BBW's attorneys told her about the TWILIGHT WOODS trademark.

- That evening at 8:24 p.m., BBW served its Second Amended Initial Disclosures identifying Mr. Colluci,

- Later that evening at 8:27 p.m., BBW advised Summit that it was making Mr. Colucci available for deposition.

Despite the foregoing, BBW contends that Summit received full discovery regarding BBW's defense. On the contrary, the timing of BBW's disclosure of Mr. Colucci's advice regarding the TWILIGHT mark ensured that Summit would be precluded from directing any written discovery to BBW specific to the claimed privilege, as well as taking the depositions of the individuals at BBW who actually received and purportedly relied upon the advice of Mr. Colucci. Although BBW contends that Summit had the opportunity to depose Ms. McDonald regarding BBW's reliance on the advice of counsel, Ms. McDonald and Mr. Colucci were not designated for the same deposition topics and Ms. McDonald is not one of the employees with whom Mr. Colucci communicated regarding the TWILIGHT mark; BBW did not make these employees available for deposition. Furthermore, Summit was not made aware prior to Ms. McDonald's deposition that BBW was waiving the privilege with respect to Mr. Colucci's communications regarding the TWILIGHT WOODS mark, and BBW first produced Mr. Colucci's communications four hours into her deposition. Of course, Summit only received BBW's Second Amended Initial Disclosures and email designating Mr. Colucci as a witness well after Ms. McDonald's deposition had concluded.

Not only did BBW's untimely revelation that it was waiving the privilege leave Summit with essentially no time or opportunity to conduct discovery as to that defense, BBW's decision to make such disclosures on May 14, 2012 – the day before the discovery deadline – is naturally suspect. Absent an explanation otherwise (which BBW has not offered, much like it has not offered any explanation for its long delay in asserting the advice of counsel defense), BBW's waiver of the privilege on the eve of discovery must be construed as sheer gamesmanship, particularly given that BBW was aware of its reliance on the advice of counsel well prior to the

filing of this suit and admission in its opposition that willfulness has been an issue in this case since June 28, 2011 and that it has steadfastly denied the same since July 21, 2011.

Summit has never tacitly or otherwise acknowledged that BBW was asserting an advice of counsel defense. BBW points to the parties' discovery hearing before Judge Cott on May 15, 2012 and Jim Curry's – Summit's counsel – acknowledgment that BBW had designated Mr. Colucci for deposition. In this dialogue, though, Mr. Curry specifically said he did not know why BBW was designating Mr. Colucci. Likewise, in her email to BBW's counsel of May 16, 2012, Ms. Pietrini – Summit's counsel – specifically confirmed Mr. Colucci's deposition "without waiving our rights to BBW attempting to assert an advice of counsel defense." BBW attempts to mutate Summit's unequivocal reservation of its right to object to the likely reason BBW was making Mr. Colucci available for designation (e.g., to assert an untimely advice of counsel defense) into the exact opposite of what it was, i.e., a waiver of the same should BBW ever assert the defense. Notably, BBW did not state at the May 15 discovery hearing or in response to Ms. Pietrini's email that it was, in fact, asserting an advice of counsel affirmative defense; instead, it waited until December 17, 2012.

BBW claims that Summit cannot complain now that it will be prejudiced; it should have moved the Court at an earlier date with respect to discovery relevant to BBW's advice of counsel defense. This is illogical. Until December 17, 2012, there was no defense on which to move. Furthermore, BBW has not provided any authority supporting its position that Summit bears the burden of moving for discovery related to BBW's unpled affirmative defense, instead of BBW bearing the burden of timely seeking leave to amend its pleading to allege the same. Clearly, BBW should have sought leave to amend its pleadings, but decided not to for strategic reasons.

Finally, BBW intimates that Summit's purported delay in noticing the deposition of BBW's witnesses is relevant to BBW's delay in asserting the privilege. The premise of BBW's argument meritless and the conclusion is baffling; any alleged delay of Summit is irrelevant to the timeliness of BBW's pleading of a defense that it has been aware of since BBW instituted this declaratory judgment action. BBW chose not to timely assert the defense and cannot be heard to complain about it now if this motion is granted, as it should be.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: February 4, 2013

/s/Jill M. Pietrini
Jill M. Pietrini (admitted *pro hac vice*)
Paul Bost (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel.: (310) 228-3700
Fax: (310) 228-3701

*Attorneys for Defendant and Counterclaimant*
SUMMIT ENTERTAINMENT, LLC

SMRH:407996079.1